UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  
----------------------------------------------------------------------X  
DARLENE A. JACKSON, *also known as Darlene A. Lewis*

                                        Plaintiff,

-against-

NEW YORK STATE OFFICE OF MENTAL  
HEALTH – PILGRIM PSYCHIATRIC CENTER and  
MICHAEL IZZANO – DIRECTOR OF HR 6,

                                        Defendants.  
----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**  
23-CV-04164 (JMA) (ARL)

**AZRACK, United States District Judge:**

Pro se Plaintiff Darlene A. Jackson brought this religious discrimination action based on the alleged refusal by Defendant New York State Office of Mental Health – Pilgrim Psychiatric Center ("OMH") to grant Plaintiff a religious accommodation to its requirement that employees receive the COVID-19 vaccine, and the related suspension and eventual termination of Plaintiff's employment. (See generally, Compl., ECF No. 1.) Presently before the Court is Defendants' motion to dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF No. 18). As set forth below, Plaintiff's state law claim is DISMISSED for lack of jurisdiction and the motion is GRANTED IN PART and DENIED IN PART as to Plaintiff's federal claim.

### I.    BACKGROUND

**A.    Facts**

The facts set forth herein are taken from Plaintiff's Complaint, documents incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice. See, e.g., Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023). Certain facts are also taken from Plaintiff's pro se opposition to the instant motion. See Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013); Romain v. State Farm Fire & Cas. Co., 639 F. Supp. 3d 416, 421 n.4 (E.D.N.Y. 2022).

1. **Plaintiff's OMH Employment Before New York's COVID-19 Vaccine Rule**

In August 2017, Plaintiff began her employment for OMH as a "Social Work Assistant 2" and a "Managed Care Coordinator (MCC) at the Yaphank clinic" located in Medford, New York. (Compl., ECF No. 1 at 6.[1])  Notwithstanding her title, Plaintiff "did not do any of the job duties" associated with a social work assistant.  (Id.)  Instead, Plaintiff performed "administrative work," which included "dealing with insurance providers, working in databases, managing data, processing Medicaid overages, [and] processing care coordination referrals . . . ." (Id.)  "One hundred percent" of that work "was computer based." (Id.)  Plaintiff's duties did not require her to "have any patient contact at any time . . . ." (Id.)

"[D]uring the height of the [COVID-19] pandemic," including from March 2020 through March 2021, Plaintiff worked from home without issue.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp."), ECF No. 18-3 at 9; see ECF No. 18-8 (corroborating excerpt of Plaintiff's OMH time and accrual record).)  Eventually, OMH required Plaintiff to return to in-person work and either take the COVID-19 vaccine or submit to weekly COVID-19 testing; Plaintiff chose the second option.  (See Compl., ECF No. 1 at 6; Opp., ECF No. 18-3 at 9.)

2. **New York Implements The COVID-19 Vaccine Rule**

In August 2021, the COVID-19 pandemic was "surging in New York, with daily positive cases up over 1000% over the course of six weeks." Does v. Hochul, 632 F. Supp. 3d 120, 128 (E.D.N.Y. 2022) (internal citation omitted); see also id. at 127 n.1 ("[T]he Court may take judicial notice of facts regarding COVID-19."). Later that month, "New York's Department of Health adopted an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and

---

[1] Pinpoint citations to the Complaint refer to the consecutive page numbering stamped across the top of each page in that document.

other identified healthcare entities to 'continuously require' certain of their employees to be fully vaccinated against COVID-19." We The Patriots USA, Inc. v. Hochul (We The Patriots I), 17 F.4th 266, 274 (2d Cir.) (citing 10 N.Y.C.R.R. § 2.61), clarified, 17 F.4th 368 (2d Cir. 2021), cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569 (2022).  That rule ("Section 2.61") applied to "those employees, staff members, and volunteers 'who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.'"[2]  Id. (quoting 10 N.Y.C.R.R. § 2.61(a)(2)).  It took effect on September 17, 2021, for "general hospitals" and nursing homes and took effect on October 7, 2021, for all other "covered entities."  Id. (internal quotations omitted).  Section 2.61 lacked a religious exemption but "d[id] not prohibit employers from providing religious objectors with accommodations."  Id. at 275; see Kane v. De Blasio, 19 F.4th 152, 160 n.5 (2d Cir. 2021) (explaining that exemptions differ from accommodations because the former allows people to be entirely "not subject to" a given rule).

### 3. Plaintiff's Employment After New York Adopted The COVID-19 Vaccine Rule

On October 15, 2021, Plaintiff's supervisor gave Plaintiff OMH's form requiring each employee to acknowledge that they must take the first COVID-19 vaccine dose by November 1, 2021, and be fully vaccinated by December 10, 2021.  (Compl., ECF No. 1 at 6.)  Plaintiff signed that acknowledgement form.  (Id.)  But four days later, Plaintiff contacted OMH human resources to "apply for a religious exemption from the COVID-19 mandate."  (Id.)  OMH immediately sent Plaintiff its standard form for requesting employment accommodations for a religious service or practice.  (ECF No. 18-7 at 1.)  On October 25, 2021, Plaintiff submitted that form—stating that

---

[2]      Section 2.61 was repealed effective October 4, 2023.  See Vol. XLV, Issue 40 N.Y. Reg. 22 (Oct. 4, 2023). "The fact that the State Mandate was repealed in October 2023 does not change [the] analysis in the present case . . . ." D'Cunha v. Northwell Health Sys., No. 23-476-CV, 2023 WL 7986441, at *3 (2d Cir. Nov. 17, 2023).

3

she sought "to continue wearing a mask and receive weekly [COVID-19] testing or work remote or hybrid"—together with a letter asserting that the vaccine conflicted with multiple tenets of her Christian religious beliefs. (Id. at 2-5.)

On November 15, 2021, OMH sent Plaintiff a letter from Defendant Michael Izzano, Director of the Bureau of Employee Relations at OMH, informing Plaintiff that her accommodation request was denied. (Compl., ECF No. 1 at 7.) Specifically, Mr. Izzano stated

> [OMH] is unable to accommodate your request to be exempt from the COVID-19 Vaccination mandate . . . Employee vaccination is imperative to safeguard the health, safety, and welfare of OMH's patients and residents and to prevent staffing shortages due to COVID-19 outbreaks. Patients and residents of OMH facilities are particularly vulnerable to COVID-19 and unvaccinated staff have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients and residents. COVID-19 transmission has caused and will cause severe illness and death to patients, residents, and OMH staff. As a Social Work Assistant 2 assigned to Yaphank Center, you currently function as the Managed Care Coordinator and the essential duties of your position may require you to be in a patient area and share common space with patients and the patient care staff. Individuals who work with patient care staff and are unvaccinated pose a significant risk of substantial harm to themselves and others. Thus, your inability to perform an essential function of your job safely would result in an undue hardship by impacting the safe and efficient operation of the facility.
>
> There is no alternate accommodation identified that would ensure the health and safety of the patients and staff and reduce the level of a direct health and safety threat to our patients and other staff at the facility.
>
> Additionally, please note your reasonable accommodation was reviewed considering factors including, but not limited to your current title, shift, work location, duties, and operational needs . . . .

(ECF No. 18-7 at 14.) Attached to that letter was an additional notice confirming that OMH was "unable to accommodate your request to be exempt from the COVID-19 Vaccine Mandate" because "[as a] Social Work Assistant 2, your job requires you to be involved in a patient area and share space with patient-facing staff. No other alternatives can be offered that would ensure the safety of staff and patients and maintain compliance with the mandate." (Id. at 17.)

4

Shortly thereafter, OMH warned Plaintiff that it would suspend her without pay if she were not vaccinated within five days. (Compl., ECF No. 1 at 7.) On November 23, 2021, Plaintiff remained unvaccinated and OMH accordingly suspended Plaintiff without pay. (Id.) In September 2022, Plaintiff was notified that OMH terminated her employment. (Id. at 8.)

**B.     Procedural History**

In November 2021, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") asserting, based on the above-described allegations, that Defendants subjected Plaintiff to religious discrimination. (See Opp., ECF No. 18-3 at 20; Pl.'s Resp. to Apr. 12, 2024, Order, ECF No. 22 at 9.) Plaintiff has not received a disposition for that complaint. (See Pl.'s Resp. to Apr. 12, 2024, Order, ECF No. 22 at 1, 9.) On February 18, 2022, Plaintiff filed a similar charge of discrimination with the U.S. Equal Employment Opportunity Employment Commission ("EEOC"). (Compl., ECF No. 1 at 9.) On March 29, 2023, the EEOC made no finding as to the merits of Plaintiff's charge and issued her a right-to-sue letter. (Id. at 9-11.)

On May 22, 2023, Plaintiff commenced this action by filing the pro se Complaint.[3] (See generally, id.) The Complaint asserts that Defendants committed religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.5.C. §§ 2000e et seq. ("Title VII"), and the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290 et seq. ("NYSHRL"), by declining Plaintiff's request for a religious accommodation from the OMH's mandatory vaccine policy and later suspending and terminating Plaintiff's employment. (Id. at 3-5.)

Defendants thereafter requested a pre-motion conference pursuant to the undersigned's Individual Rules to obtain leave to file the instant motion. (ECF No. 12.) After the Court waived its pre-motion conference requirement and set a briefing schedule (see Nov. 1, 2023 Order),

---

[3]     Plaintiff also filed an application to proceed in forma pauperis, which the Court granted. (ECF Nos. 2-3.)

briefing for the motion concluded on February 6, 2024. (ECF No. 18.) The Court subsequently directed Plaintiff to provide additional details about her NSYDHR complaint because it potentially divested this Court of jurisdiction over Plaintiff's NYSHRL claim. (See Orders dated Feb. 27, 2024, Mar. 18, 2024, Apr. 12, 2024.) Plaintiff responded as directed. (See Pl.'s Resp. to Apr. 12, 2024, Order, ECF No. 22.)

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

The Court has "an independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte." E.g., Hunter v. McMahon, 75 F.4th 62, 66 (2d Cir. 2023) (internal quotation marks omitted); see FED. R. CIV. P. 12(h)(3). Dismissal of a claim for lack of subject matter jurisdiction "is proper when the district court lacks the statutory or constitutional power to adjudicate it." Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (internal quotation marks omitted); see Brokamp v. James, 66 F.4th 374, 386 (2d Cir. 2023) (same). When assessing subject matter jurisdiction, the Court "accepts all material facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor." Liranzo v. United States, 690 F.3d 78, 84 (2d Cir. 2012); see NRDC v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (similar). The Court may also "rely on non-conclusory, non-hearsay statements outside the pleadings" to evaluate subject matter jurisdiction. M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir. 2013); see Cooke v. United States, 918 F.3d 77, 80 (2d Cir. 2019) (similar). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Cooke, 918 F.3d at 80 (quoting McGowan v. United States, 825 F.3d 118, 125 (2d Cir. 2016)).

B.  **Failure To State A Claim**

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). Courts evaluate motions under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). That standard requires the Court to accept as true all well-pled factual allegations in the Complaint and consider documents attached to the Complaint, documents incorporated by reference in or integral to the Complaint, and matters of which the court may take judicial notice. E.g., Clark, 89 F.4th at 93. Because Plaintiff is pro se, the Court may also accept as true well-pled factual allegations in Plaintiff's opposition to the instant motion. See Walker, 717 F.3d at 122 n.1; Romain, 639 F. Supp. 3d at 421 n.4. While the Court accepts Plaintiff's well-pled allegations as true, the Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements. See, e.g., In re Facebook, Inc., IPO Derivative Litig., 797 F.3d 148, 159 (2d Cir. 2015). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 664; see also id. at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Determining whether the Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 664.

C.  **Plaintiff's Pro Se Status**

"Where, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)); see

7

Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)). This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." McLeod v. Jewish Guild For The Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted). "Nonetheless, a pro se complaint must state a plausible claim for relief." Meadows v. United Servs., 963 F.3d 240, 243 (2d Cir. 2020) (quoting Hogan, 738 F.3d at 515). That is, "dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." Temple v. Hudson View Owners Corp., 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (citing Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997)); see Williams v. Richardson, 425 F. Supp. 3d 191, 201 (S.D.N.Y. 2019) ("[T]he duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." (internal quotation marks omitted)). Ultimately, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" E.g., Peavey v. A. Rosenblum, Inc., 793 F. Supp. 2d 590, 594 (E.D.N.Y. 2011) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); see Faretta v. California, 422 U.S. 806, 834 n.46 (1975) (similar).

### III.   DISCUSSION

**A.   The Court Lacks Jurisdiction Over Plaintiff's NYSHRL Claims**

Eighteen months before she filed this case, Plaintiff filed a complaint with the NYSDHR based on the allegations underlying her instant NYSHRL claims. (See Pl.'s Resp. to Apr. 12, 2024, Order, ECF No. 22 at 9; Opp., ECF No. 18-3 at 20.) The NYSDHR has not yet rendered a decision on that complaint. (See Pl.'s Resp. to Apr. 12, 2024, Order, ECF No. 22 at 1, 9.)

8

Courts may consider causes of action for discriminatory practices in violation of New York law "unless such person has filed a complaint [with the NYSDHR] or with any local commission on human rights . . . ." N.Y. EXEC. LAW § 297(9). This principle, known as the election of remedies doctrine, deprives courts of jurisdiction over NYSHRL claims based on facts previously raised in complaints to the NYSDHR. See Desardouin v. City of Rochester, 708 F.3d 102, 106 (2d Cir. 2013); York v. Ass'n of the Bar of N.Y., 286 F.3d 122, 127 (2d Cir. 2002); Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 882 (2d Cir. 1995). Thus, "a litigant who files a claim with the NYSDHR cannot bring the same claim in federal court." Waller v. Muchnick, Golieb & Golieb, P.C., 523 F. App'x 55, 56 n.1 (2d Cir. 2013).

This rule does not apply where: (1) the NYSDHR complaint is dismissed for administrative convenience, untimeliness, or annulment of the election of remedies, or (2) the EEOC filed the complaint with the NYSDHR in accordance with the EEOC's obligations under Title VII. See EXEC. § 297(9); Burns v. City of Utica, 590 F. App'x 44, 51 (2d Cir. 2014); York, 286 F.3d at 126 n.2; Williams v. City of N.Y., 916 F. Supp. 2d 517, 522 (S.D.N.Y. 2013). Neither exception applies here. Plaintiff reported that her NYSDHR complaint is pending, meaning it has not been dismissed for one of the above-described reasons. (See Pl.'s Resp. to Apr. 12, 2024, Order, ECF No. 22 at 9); Wiercinski v. Mangia 57, Inc., No. 09-CV-4413, 2010 WL 2681168, at *3 (E.D.N.Y. July 2, 2010) (finding election of remedies doctrine precluded jurisdiction where the NYSDHR had not ruled on plaintiff's claims). And Plaintiff filed her complaint directly with the NYSDHR. (Pl.'s Resp. to Apr. 12, 2024, Order, ECF No. 22 at 9); see Williams, 916 F. Supp. 2d at 523; Jackson v. N.Y. State Dep't of Labor, 709 F. Supp. 2d 218, 225 (S.D.N.Y. 2010).

Because she filed a NYSDHR complaint based on the same allegations she later raised in this case, and no exception to the election of remedies doctrine applies, Plaintiff's NYSHRL claims

9

are dismissed for want of jurisdiction.  See <u>McAllister v. Quik Park</u>, 661 F. App'x 61, 63-64 (2d Cir. 2016); <u>Rumsey v. Ne. Health, Inc.</u>, 634 F. App'x 318, 320 (2d Cir. 2016); <u>Desardouin</u>, 708 F.3d at 106.

**B.      <u>Plaintiff's Title VII Failure to Accommodate Claim is Viable</u>**

"Title VII . . . requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" <u>Groff v. DeJoy</u>, 600 U.S. 447, 454 (2023) (quoting 42 U.S.C. §2000e(j)).  To maintain a Title VII claim for failure to grant a religious accommodation, Plaintiff must first establish a <u>prima facie</u> case by showing that (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failing to comply with the conflicting employment requirement. <u>Doughty v. Dep't of Developmental Servs. STS</u>, 607 F. App'x 97, 98 (2d Cir. 2015); <u>Knight v. State Dep't of Pub. Health</u>, 275 F.3d 156, 167 (2d Cir. 2001).  "Once a <u>prima facie</u> case is established by the employee, the employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship."  <u>Hale v. Vidal</u>, No. 22-2973, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (quoting <u>Baker v. Home Depot</u>, 445 F.3d 541, 546 (2d Cir. 2006)).

**1.  Plaintiff Met Her Burden to Plead a <u>Prima Facie</u> Case**

Defendants summarily argue that Plaintiff failed to plead each element of a <u>prima facie</u> Title VII case for failure to grant a religious accommodation. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Def. Mem."), ECF No. 18-1 at 4.)  Defendants are mistaken.  As explained below, Plaintiff met each of the three <u>prima facie</u> elements at this stage of the case.

a. <u>Plaintiff Met the First Prima Facie Element</u>

Plaintiff pled that OMH required her to take the COVID-19 vaccine as a condition of continued employment. (<u>See</u> Compl., ECF No. 1 at 6-7; <u>see also</u> Def. Mem., ECF No. 18-1 at 3-4 (explaining that the requirement derived from Section 2.61).) Thus, the remaining question for the first element of Plaintiff's <u>prima facie</u> case is whether she had a bona fide religious belief that conflicted with taking the COVID-19 vaccine.

Title VII defines religion broadly to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). "The inquiry as to whether a person's belief is religious is twofold: 'whether the beliefs professed by a claimant are sincerely held and whether they are, in his own scheme of things, religious.'" <u>Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.</u>, 651 F. Supp. 3d 695, 720 (S.D.N.Y. 2023) (quoting <u>Patrick v. LeFevre</u>, 745 F.2d 153, 157 (2d Cir. 1984)) (brackets omitted). "The first requirement (i.e., sincerity of a person's religious belief) is a question of fact—unsuitable to resolution at the motion to dismiss stage." <u>Id.</u> at 721 (first citing <u>Davis v. Fort Bend Cnty.</u>, 765 F.3d 480, 485 (5th Cir. 2014); then citing <u>E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico</u>, 279 F.3d 49, 56 (1st Cir. 2002); and then citing <u>Le Fevre</u>, 745 F.2d at 159). As to the second requirement (i.e., that the beliefs be religious), "the question is whether the beliefs professed are in the plaintiff's 'own scheme of things, religious' and 'impulses prompted by dictates of conscience as well as those engendered by divine commands are safeguarded against secular intervention, so long as the claimant conceives of the beliefs as religious in nature.'" <u>Id.</u> (quoting <u>LeFevre</u>, 745 F.2d at 158) (brackets omitted). A court's evaluation of whether beliefs are religious "is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be

11

acceptable, logical, consistent, or comprehensible to others . . . ." Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 714 (1981).

Plaintiff pled the relevant bona fide religious belief. She pled that "the COVID-19 vaccine mandate . . . conflict[ed] with my sincerely held religious beliefs." (Compl., ECF No. 1 at 6; see also id. at 7 ("I have sincerely held religious and spiritual beliefs which conflict with the Covid-19 mandate.").) Plaintiff then explained that she follows Christianity and explained why she believes that taking the COVID-19 vaccine would violate several provisions of her faith's sacred text. (See Opp., ECF No. 18-3 at 2-3.) Against that backdrop, Plaintiff reportedly believes that "God created our bodies with an innate ability to heal and fight disease" and that she cannot allow the COVID-19 vaccine to "interfere with my immune system[,] . . . which I believe God created to be robust." (Id. at 2; see also id. ("The mandating of the [COVID]-19 vaccine is a violation of . . . my deeply held religious belief to bodily integrity.").) Plaintiff also stated that, after she learned certain public health authorities reported that the "COVID-19 vaccines are produced by, derived from, manufactured with, tested on, developed with, or [are] otherwise connected to aborted fetal cell lines," she believed taking the COVID-19 vaccine would violate additional tenets of her faith. (Id. at 6 (quoting more than ten biblical passages Plaintiff believes are incompatible with taking the COVID-19 vaccine)); see also We the Patriots I, 17 F.4th at 276-77 (recognizing that COVID-19 vaccines were tested and developed using "fetal cells obtained from elective abortions").

Given the foregoing, Plaintiff satisfies the first element of her prima facie case. See Algarin v. NYC Health + Hosps. Corp., 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023) (concluding that similar assertions that the COVID-19 vaccine conflicted with plaintiff's Christian beliefs supported a prima facie Title VII employment religious discrimination claim), aff'd, No. 23-1063, 2024 WL

12

1107481 (2d Cir. Mar. 14, 2024); Gardner-Alfred, 651 F. Supp. 3d at 721-22 (concluding that similar beliefs conflicted with a COVID-19 vaccine requirement and supported a prima facie Title VII claim); see also Langer v. Hartland Bd. of Educ., No. 22-CV-01459, 2023 WL 6140792, at *6 (D. Conn. Sept. 20, 2023) ("[D]oubts at this time about Langer's articulation of her religious belief and how it conflicts with the [COVID-19] testing requirement do not warrant dismissal of her complaint at the pleadings stage.").

      b.    Plaintiff Met the Second Prima Facie Element

Plaintiff pled that she informed OMH on October 25, 2021, of her religious objections to its vaccine requirement. (See Compl., ECF No. 1 at 6-7.) Indeed, Plaintiff submitted OMH's religious accommodation form with a two-page letter that detailed Plaintiff's religious objections to OMH's COVID-19 vaccination requirement. (ECF No. 18-7 at 2-5; see also Opp., ECF No. 18-3 at 1 ("In my request I identified those teachings and expressed what my beliefs were.").) This notice to OMH satisfies the second element of Plaintiff's prima facie case. See Algarin, 678 F. Supp. 3d at 508; Langer, 2023 WL 6140792, at *5; Tandian v. State Univ. of N.Y., __ F. Supp. 3d __, No. 22-CV-1401, 2023 WL 8827577, at *9 (N.D.N.Y. Oct. 13, 2023).

      c.    Plaintiff Met the Third Prima Facie Element

Plaintiff pled that OMH suspended her without pay and ultimately terminated her employment because she declined to take the COVID-19 vaccine. (Compl, ECF No. 1 at 7-8; see also Opp., ECF No. 18-3 at 8 (Plaintiff asserting that her suspension and termination reflect that "I was discriminated against for exercising my religious freedom and not complying with being injected with the covid-19 vaccine.").) This is "sufficient to plead the final element of the prima facie case of religious discrimination for failure to accommodate." Algarin, 678 F. Supp. 3d at 509 (addressing allegations that, as here, plaintiff's employer put him on unpaid leave and later fired

13

him for failing to comply with the mandatory vaccination policy from which he sought a religious accommodation); see Gardner-Alfred, 651 F. Supp. 3d at 722 (declining to dismiss Title VII claims asserting plaintiffs were fired for noncompliance with a mandatory COVID-19 vaccine policy after they requested religious accommodations to it); Langer, 2023 WL 6140792, at *8 (similar).

### 2. Defendants Showed that Some, but not all, of Plaintiff's Requested Accommodations Would Impose an Undue Hardship

Given that Plaintiff sustained her prima facie case at this stage, the burden shifts to the Defendants to show that they could not accommodate Plaintiff's religious beliefs without suffering an "undue hardship." Baker, 445 F.3d at 546 (quoting Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002)); Knight, 275 F.3d at 167 (citing Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 (2d Cir. 1985), aff'd, 479 U.S. 60 (1986)).  The Supreme Court recently clarified that undue hardship is "shown when a burden is substantial in the overall context of an employer's business." Groff, 600 U.S. at 468 (rejecting the "more than de minimis" standard derived from Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977)); see D'Cunha, 2023 WL 7986441, at *2 (acknowledging this change to the standard for evaluating an employer's "undue hardship" with respect to a requested religious accommodation); Cagle v. Weill Cornell Med., 680 F. Supp. 3d 428, 436 n.2 (S.D.N.Y. 2023) (same).  That necessitates a "fact-specific inquiry." Groff, 600 U.S. at 468.  At this point, the inquiry is limited: "The defense of undue hardship 'may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) if the defense appears on the face of the complaint.'"  D'Cunha, 2023 WL 7986441, at *2 (quoting Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd., 620 F.3d 137, 145 (2d Cir. 2010)) (ellipsis omitted).

Defendants assert that granting Plaintiff's requested accommodations would have imposed an undue hardship because they would have required OMH to violate New York State's vaccine mandate under Section 2.61. (Def. Mem., ECF No. 18-1 at 4-5.)  The Court accepts the following

14

premises to that argument because they are undisputed: OMH was subject to Section 2.61 as a covered entity and Plaintiff fell under Section 2.61's definition of "personnel" when she worked on site. See D'Cunha, 2023 WL 7986441, at *3 (taking this approach). But as explained below, this argument succeeds for only two of Plaintiff's three alternative requested accommodations.[4]

       a.    Plaintiff's Requested Accommodations Involving In-Person Work Would Have Imposed an Undue Hardship

Defendants correctly contend that Plaintiff's requested accommodations that would allow her to work on site—i.e. her requests for weekly testing or a "hybrid" schedule of reduced in-person work (ECF No. 18-7 at 3)—without taking the COVID-19 vaccine would have imposed an undue hardship as a matter of law. (See Def. Mem., ECF No. 18-1 at 4-5.) OMH could not have granted these accommodations "without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship." D'Cunha, 2023 WL 7986441, at *3 (first citing Cassano v. Carb, 436 F.3d 74, 75 (2d Cir. 2006); and then citing Lowman v. NVI LLC, 821 F. App'x 29, 32 (2d Cir. 2020)); see, e.g., Algarin, 678 F. Supp. 3d at 510 (holding the requested "weekly testing accommodation" would impose an undue hardship given that it "would not remove Plaintiff from the scope of Section 2.61 because Plaintiff would have continued working on site"); Tandian, 2023 WL 8827577, at *9 (dismissing Title VII claim on undue hardship grounds because plaintiff's requested accommodation would have allowed her to work on-site "unvaccinated, which would violate Section 2.61"). To be sure, Title VII "does not require" entities covered by Section 2.61 to "allow [religious objectors] to continue working at their current [in-person]

---

[4] That Plaintiff offered three alternatives in her request for accommodations—in-person work with weekly testing, a "hybrid" schedule of reduced in-person work, and entirely remote work (ECF No. 18-7 at 3)—was consistent with the Second Circuit's instruction that employees seeking accommodations (and employers considering those requests) "should remain flexible, with an eye toward achieving a mutually acceptable adjustment." Handverger v. City of Winooski, 605 F. App'x 68, 71 (2d Cir. 2015) (quoting Cosme, 287 F.3d at 158).

15

positions unvaccinated."[5]  We The Patriots I, 17 F.4th at 292; see Hochul, 632 F. Supp. 3d at 147 (similar); Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C., No. 22-CV-2929, 2023 WL 3467143, at *6 (S.D.N.Y. May 15, 2023) (similar); see also Cagle, 680 F. Supp. 3d at 436 (citing the "long line of cases in the Southern and Eastern Districts of New York" that "uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption . . . at the cost of violating Section 2.61").

     b. <u>The Court Cannot Presently Conclude that Plaintiff's Requested Accommodation to Work Remotely Would Impose an Undue Hardship</u>

The Court reaches a different conclusion with respect to Plaintiff's requested accommodation of an entirely "remote" work schedule.  (ECF No. 18-7 at 3.)  As the Second Circuit previously explained, "Section 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation <u>that removes the individual from the scope of the Rule</u>."  We The Patriots I, 17 F.4th at 292 (emphasis added).

> In other words, it may be possible under the Rule for an employer to accommodate—not exempt—employees with religious objections, by employing them in a manner that removes them from the Rule's definition of "personnel." Such an accommodation would have the effect under the Rule of permitting such employees to remain unvaccinated while employed.

We The Patriots USA, Inc. v. Hochul (We The Patriots II), 17 F.4th 368, 370 (2d Cir. 2021) (emphases removed); see We The Patriots I, 17 F.4th at 292 (similar).  Defendants do not dispute that allowing Plaintiff to work remotely would place her outside the definition of "personnel" under Rule 2.61.  See We The Patriots I, 17 F.4th at 274 (explaining that covered "personnel"

---

[5] Plaintiff's reliance on Med. Pros. for Informed Consent v. Bassett, 185 N.Y.S.3d 578, 585 (Sup. Ct. 2023) for its invalidation of Section 2.61 is misplaced.  (See Opp., ECF No. 18-3 at 9, 14.)  That decision is not binding on this Court; was issued in 2023, well after the employment activity Plaintiff complains of; and was stayed by the Appellate Division, Fourth Department.  See Algarin, 678 F. Supp. 3d at 511-12 (finding Bassett unpersuasive for these reasons); Parks v. Montefiore Med. Ctr., No. 23-CV-4945, 2024 WL 917330, at *4 (S.D.N.Y. Mar. 4, 2024) (same); Dennison, 2023 WL 3467143, at *6 n.8 (same); see also Med. Pros. for Informed Consent v. Bassett, 197 N.Y.S.3d 785, 787 (App. Div. 4th Dep't 2023) (dismissing appeal as moot due to Section 2.61's repeal).

included those who "could potentially expose other covered personnel, patients or residents to" COVID-19 (internal quotation marks omitted)); Dennison, 2023 WL 3467143, at *6 (confirming that remote workers do not qualify as "personnel" under Section 2.61); accord Lowe v. Mills, 68 F.4th 706, 723 (1st Cir. 2023) (reasoning that remote employees were outside the scope of Maine's similar COVID-19 vaccine requirement). In fact, Defendants do not even address Plaintiff's requested accommodation for entirely remote work. (See Def. Mem., ECF No. 18-1 at 5 (asserting that Plaintiff requested "a blanket religious exemption allowing [her] to continue working at her current position unvaccinated").) It follows that Defendants failed to carry their burden to show "the face of the complaint" makes clear that allowing Plaintiff to work remotely would have imposed an undue hardship on OMH.[6] D'Cunha, 2023 WL 7986441, at *2 (quoting Iowa Pub. Emps.' Ret. Sys., 620 F.3d at 145).

Even if Defendants contended that allowing Plaintiff to work remotely would impose an undue hardship, the Court would reject that argument at this stage. Plaintiff asserts that she performed "administrative work" that was entirely "computer based" and that OMH allowed her to do that work remotely for over one year before it required Plaintiff to return to in-person work. (Compl., ECF No. 1 at 6; Opp., ECF No. 18-3 at 9.) Therefore, "the issue of whether it would have been an undue burden to allow [Plaintiff] to [work] remotely . . . is not grounds to grant the motion to dismiss . . . ."[7] Langer, 2023 WL 6140792, at *7; see Vasilenko v. City of Portland, No. 22-CV-1203, 2023 WL 3467232, at *6 (D. Or. Mar. 6, 2023) (concluding that "the Court cannot

---

[6] Defendants' single-page reply likewise did not address Plaintiff's request to work remotely, though Plaintiff incorporated that request into the Complaint and submitted it with her opposition brief. (See ECF No. 18-11.)

[7] The cases Defendants rely upon do not compel a contrary conclusion. (See Def. Mem., ECF No. 18-1 at 4-5.) The employees in those cases did not seek entirely remote work. See We The Patriots I, 17 F.4th at 292 (addressing blanket religious exemption); Hochul, 632 F. Supp. 3d at 145 (same); Dennison, 2023 WL 3467143, at *6 (same); Riley v. New York City Health & Hosps. Corp., No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (same); Algarin, 678 F. Supp. 3d at 510 (addressing in-person work with weekly testing).

17

determine" on a motion to dismiss a similar Title VII claim "that allowing plaintiff to work full-time from home would [impose] an undue burden"), report and recommendation adopted, 2023 WL 3455639 (D. Or. May 14, 2023); see also Laguerre v. Nat'l Grid USA, No. 20-3901-CV, 2022 WL 728819, at *4-5 (2d Cir. Mar. 11, 2022) (holding that whether allowing remote work as an accommodation would impose an undue burden under the Americans with Disabilities Act was "a material fact in dispute and one best left to the factfinder on remand"); accord Kinney v. St. Mary's Health, Inc., 76 F.4th 635, 644 (7th Cir. 2023) ("[E]mployers cannot rely on an automatic presumption working from home is unreasonable . . . Determining whether a specific job has essential functions that require in-person work has become much more of a case-specific inquiry."); cf. Dennison, 2023 WL 3467143, at *6 (dismissing Title VII claim on undue hardship grounds because plaintiffs "did not request remote work or some other arrangement that would have removed them from [Section 2.61's] definition of 'personnel'").

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's NYSHRL claim is dismissed for lack of jurisdiction and Defendants' motion to dismiss Plaintiff's Title VII claim (1) is DENIED to the extent that claim concerns Plaintiff's request to work entirely remotely, and (2) is otherwise GRANTED.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Dated:   May 1, 2024
            Central Islip, New York

                                                                    (/s/ JMA)
                                                    JOAN M. AZRACK
                                                    UNITED STATES DISTRICT JUDGE

18